Good morning. May it please the court. Sonia Carson for Andrew Bolton and Daniel Breitman. I'd like to reserve three minutes for rebuttal. I have two arguments. The first is that there's no Bivens cause of action in this new context. As the Fourth and Fifth Circuits have already held in cases that Ms. Rueda concedes are analogous to hers. As the Supreme Court reiterated in Abbasi, the core question in any Bivens case is who should decide whether to create a new damages remedy, Congress or the courts. Abbasi explains that the answer most often will be Congress and for the reasons I'll discuss, that's again correct here. And for that reason, the claim against my clients should have been dismissed. My second argument is that my clients are entitled to qualify immunity. As the Supreme Court explained in Iqbal, it's not sufficient for a complaint to make allegations that are merely consistent with liability. It must move across the line between possible and plausible. And the complaint here falls short. Ms. Rueda's theory is that my clients arrested her for no reason, without even arguable cause to believe that she lacked lawful immigration status. But her allegations are that this was not a chance encounter. She says that my clients sought her specifically and arrested her only after confirming her identity. She says in the complaint that there was no NTA issued for three weeks, but in fact the NTA, which was taken judicial notice of, was the same day. That's correct, Your Honor, and that's in the record. I believe it excerpts the record. Do you have any reason to know whether it was before or after they showed up? Pardon me? Do we know a time? Do we know that it was after they showed up? So the notice to appear, which is in the record at Excerpt of Record 106-107, is dated May 18, 2017, which is the day of her arrest. There is no time listed on the NTA. So the complaint is just inaccurate on this question? Wrong. It's difficult to reconcile with the documents that the district court properly took judicial notice of, yes. And here, the allegations which are underscored, in plausibility of the allegations which are underscored by the NTA, are not only consistent with, but in the words of Iqbal, more likely explained by lawful conduct. For this reason, too, the district court should have dismissed the claim against my clients. I'd like to turn first to talk about... Is there any reason that we should decide the Bivens issue if we conclude that there was simply, that the complaint simply doesn't allege a fourth amendment violation, even if they're irrefutable? I mean, it seems that the court, for example, in Hernandez, went in the other direction. Why would we go in that direction? Your Honor, the court in Iqbal concluded that there was no plausibly alleged... I'm talking about Hernandez litigation, in which there was a qualified immunity question and a plausibility question and a Bivens question, and only in the second appeal to the Supreme Court, there was a Bivens question. Why would we go first to the Bivens question? Your Honor, my clients would not oppose reversal, either on the question whether it was a cause of action or on the adequacy of the allegation of unconstitutional misconduct. The court can decide the case on either grounds, and on either grounds, the district court's decision was incorrect. Starting with qualified immunity, the district court... Pardon me, Judge Seibel? Nothing, I was just trying to unmute this. Can you hear me? I can hear you, sir. I don't have a question yet. On qualified immunity, the district court's analysis was that because Ms. Rueda had chosen to omit from her complaint any allegations that would support the theory that my clients had arguable probable cause, that she had sufficiently alleged the absence of even arguable plausible cause. And that is simply backwards. A district court cannot short circuit the Rule 8 inquiry in this fashion. And here, what we have are claims that my clients arrived at Ms. Rueda's home, apparently recognized her on the street and surrounded her, asked for her name, said, that's her, and then conducted an arrest. Coupled with the fact that the notice to appear and the notice of hearing issued on the same day, as Judge Berzon, you observed, and the fact that it's never been disputed here that Ms. Rueda lacks lawful immigration status, it's simply not plausible to conclude, as the district court did, that there was no basis for qualified immunity. I have a procedural question. Is the DACA issue still pending in the district court? It is, Your Honor. My understanding is that the only reason we have jurisdiction is because of the qualified immunity appeal. So we have appealed on qualified immunity. The Supreme Court has explained that the question whether there's a Bivens cause of action is antecedent, and the Supreme Court resolved that question, even in cases where it did not go on to address qualified immunity. But there's no doubt. That's why a good chunk of the case, maybe the biggest chunk of the case, is still in the district. Yes, most of the complaint deals with claims against agency defendants related to the denial of Ms. Rueda's subsequent DACA application. An application, of course, that she would have no to file if she had lawful status. And the first complaint is that of the case because the court decided against her and it wasn't at least at this juncture, as a qualified immunity appeal. That's right. The district court concluded that Ms. Rueda had not defeated qualified immunity on the First Amendment claim, and Ms. Rueda has not crossed the field. So that claim is no longer part of this case, nor is any allegation of alleged retaliation. She is clear in her brief that her Fourth Amendment claims stand or fall based on her assertion that my clients lacked even arguable clause to believe that she was present in the country illegally. And it really underscores the implausibility of her theory of this case. Again, her assertion is essentially that my clients acted at random, that they had no reason, no lawful reason to arrest her. And that simply can't be reconciled with her own allegations in the complaint about the way that this arrest unfolded, much less with same-day immigration charges, which also, is my understanding, remain pending. I believe that the next hearing in her immigration case is currently scheduled for May of 2021. If there are no further questions on qualified immunity, I'll turn back to the special factors analysis. Of course, as the Supreme Court explained in Abbasi, the question is whether there are sound reasons to believe that Congress might doubt the propriety of recognizing a new damages bond in this context. And here there are. As we explained in district court, and as I think Ms. Rueda has not disputed, she is free to raise precisely the claim that she is pursuing through her Bivens case in her removal proceedings, as have other defendants. That is not in the statute. That's implied into the statute. In other words, it's no more or less implied than the Bivens action. Is that right? I disagree, Your Honor. 1252A actually preserves the ability of persons in removal proceedings to bring constitutional claims and makes clear that constitutional claims should be brought in that forum. When we are asking whether there's a reason to believe Congress's silence might not be an oversight, that it's failure to create a damages remedy, which the INA does not, might not be inadvertent. It is exactly in addition to this that are powerful, as this court recognized in Mermady. Ms. Rueda's complaint about the adequacy of the... The whole issue of whether you can raise in immigration proceedings for pre-Fourth Amendment claims with regard to the matter in which the search and seizure claims are, I don't even know if there's a case saying you can raise the arrest case, the arrest Fourth Amendment seizure case, but that's nowhere in the statute. The case that you're talking about, the statute that you're talking about deals with constitutional claims or questions of law dealing with the proceedings, but the notion that you could go outside the proceedings was something that this court created. Your Honor, the question, of course, is whether the INA creates a damages remedy and what the fact that it... It seems very difficult to infer from the fact that there is one kind of judicially implied ability to raise this, which is not in the statute, that you can't have another judicially implied or recognized kind of proceeding that's not in the statute. It's not a very good argument. Well, and yet that is what this court concluded in Mermady, which of course binds this panel, and it is consistent with the Supreme Court's analysis in Abbasi, which applies here. The question is, when looking not only at the statute, of course, but at all of the reasons that there might be cause for a court to pause, and a pause is all that is required before judicially superimposing a damages remedy, apply here and are underscored by the fact that Ms. Rueda can raise, as again she I think has not disputed, precisely the claim that she wants to provide that opportunity did not also authorize a damages remedy, particularly in the immigration context, which is constitutionally committed to the political branches in the face of a statute like the INA, which is complex and comprehensive, which shows that Congress guarded its regulatory authority. It would be inappropriate under the separation of powers for this court to recognize a further remedy that Congress did not see fit to allow. Now, it is not only... ...argument that... ...secondly... So, Your Honor, forgive me. I'm not sure that I heard part of your question, but let me try to respond, and please let me know if I've missed part of it. There are two points to make about the court in Lenuza underscored no fewer than four times, that the conduct in that case was egregious and the facts that it were considering and the claim that it was considering was narrow. The government attorney's criminal misconduct in that case worked, as this court concluded, to completely bar the plaintiff from taking advantage of the INA's remedial scheme. We don't have anything... Well, that was the government's argument, and this court rejected it and concluded that instead the case was that the government attorney's misconduct, again, criminal misconduct for which he was prosecuted and pled guilty, had completely barred any relief under the INA. That's my first point. My period, but not necessarily. It doesn't seem in that way. I mean, this one is less obviously, it's less obvious that there's a administrative proceeding. So, Your Honor, I apologize. Can I ask you to repeat the last part of your question? But it seemed to me that the statutory remedy in Lenuza is more obvious than in this case. I mean, because in Lenuza, there is a motion to reopen for change service. Well, be that as it may, Your Honor, whatever the court thinks about the specificity of the alternative process that the INA provides, I think there can be little doubt that it does provide an alternative existing process through which this plaintiff may vindicate the constitutional interest that she seeks to allege through Bivens. And that is the standard that the Supreme Court has. Has there ever been a case in which the arrest, as opposed to a search and seizure, has been raised and recognized as an administrative challenge to the arrest as recognized in a deportation proceeding? Yes, so the cases that we cite on page 25 at footnote 3 of our opening brief, which we again cite and discuss further in our reply brief, including Echeverria-Perez versus Barr, that was a case about whether there had been an unlawful Fourth Amendment violation as a result of an arrest that happened without first in the court's word establishing identity or alienage. These sorts of claims have been raised in removal proceedings reviewed by this court, and furthermore, even setting aside the availability of an alternative existing process for the claim that Ms. Rueda seeks to vindicate here, the other special factors, including the effect on the political branch's prerogatives, the practical consequences of recognizing a remedy in this context, which are only underscored, I should add, by the threadbare nature of the plaintiff's allegations here. And then furthermore, to the extent that Ms. Rueda continues to argue that there is some underscore why a Bivens cause of action is not available here, because these are circumstances where Congress is both best positioned to weigh the costs and benefits of recognizing a new damages remedy, and has already implicitly spoken to the propriety of doing so through the INA. I see that my time has expired. Thank you very much. Thank you. Ms. Pei. Thank you. Good morning, at least the court. Sally Pei appearing on behalf of Theopeli Claudia Rueda Vidal. Before I get going, I just wanted to address Judge Berzon's first question to my opposing counsel about the allegation in the complaint about the timing of the immigration charges. I do think that the complaint was inaccurate in suggesting that not until that no charges had been filed while she was detained. But I think the record reflects that the charges were filed in immigration court a week after the events that give rise to her Fourth Amendment claim. And that's the relevant time for our purposes. So if you look on page 106 of the record, there's a stamp that says that the notice to appear was received by the In terms of any possible incomes, the rest of her didn't know whether she was illegal. The fact that somebody or others filled out an NTA the same day, maybe even before we don't know, certainly indicates that. So we have in our complaint that we have other allegations that indicate that go to exclude that alternative explanation. So I think the first one is that when they arrested her, they simply surrounded her, asked her name and took her away without ever explaining who they were or why they were arresting her. And that's in spite of the fact that there are agency regulations that require agents to state the reason why a person is being arrested. And so the reasonable inference to draw from that fact at this stage of the proceedings, it must be drawn in our favor, is that they did in fact have a legitimate reason to arrest her at that point in time. I think the other facts that we have in the complaint that go to exclude the government's alternative explanation are really the collection of facts we have about her advocacy activities. And that, I think, as the district court recognized, the fact that the defendants were searching for her by name, I think it's just as reasonable. And again, an inference should be drawn in our favor that they were looking for her because they knew about her advocacy activities. Well, that may be, but that's the First Amendment claim that you have in the field now. And I assume that that case, that issue could be appealed at the end of the case. It's not, you don't have to bring qualified people in as far as I know. You don't have to when it was denied. So I don't think that's necessarily out of the case, but it's not the same issue. It's a different issue. So I agree that the claims are logically distinct, but I think the fact that they were searching for her by name and that they had this, let me just say that the relevance of those... I mean, if they were told by someone in headquarters, you know, this person is legally in the country and we're filing an NTA against her, either we have filed one or we're filing one later today, and you should go get her because she's not legally here, which no one's contesting that she actually wasn't. They're supposed to arrest her without knowing who she is. I don't understand that. I think that, you know, I think the last thing that I'll say about this is I think that the defendants are free to present that kind of evidence at the summary judgment stage. At the pleading stage, I think, you know, the plaintiffs are obviously not in a position to be able to provide that kind of information. It's in the hands of the defendant. And so we think that at least on the pleadings... But don't you have to provide some reason to think they didn't have probable cause? I mean, it seems so ridiculous for them. Why would they come in when she was in fact illegal and they in fact were filing an NTA against her either before or after they came the same day. To me, it's not plausible that they would do that if they didn't know whether she was illegal. I mean, I understand that you're saying that they only arrested her because of her activity and that may be, but her activity among all the illegal people, but not that she was undocumented people, but not that she, that they didn't think she was undocumented. I don't know where you get that from. So I think the argument is that the mere fact that somebody is speaking out on immigrant rights does not give rise to reasonable suspicion or probable cause that somebody is in there. That's true. But the notion that the DHS people would come in and detain her without first finding out whether she in fact was undocumented just strikes me as quite implausible, even though I don't think it's implausible. They might well have done it because of all those people, she was the one who was talking out, but that's not your case right now. It is our case. I think that we have continued to allege that and we have not abandoned our allegations that she was arrested because of her activities. That's not what we're dealing with now, which is only a fourth amendment claim, right? Respectfully, your honor, I think the allegations are still relevant to the fourth amendment issue, but I see that I'm not getting much traction here. So I will, I'll move on. I think. But then there's no point moving on. I mean, that's my problem. I mean, that the Bivens issue was a big issue and this is a very fact specific issue and why we would want to decide the Bivens issue if we didn't think that there was a plausible complaint here. I mean, we could allow you to try your complaint again, but I don't think you're going to be able to do it. So why should we be deciding an extremely major Bivens issue on such a weak record? So I think, I think that's precisely why qualified immunity is, should be left to the summary judgment stage where there can be a fact, fact development, and we can inquire and the government, the defendants can present evidence about what qualified immunity at summary judgment. But I think, yes, because we think that we prevail both on Bivens and on qualified immunity. So on, on the Bivens issue, of course we, we think that this is, this is not a new context, but setting that aside, I wanted to just address this idea of alternative remedies since that seemed to be the focus of, of my opposing counsel's argument. Defendants have continued to argue that Misroita can bring a fourth amendment claim in removal proceedings, but that's just not correct. I want to be very clear, there is no fourth amendment claim in removal proceedings. The only way that it can come up is on a motion to suppress, but suppression is not an adequate remedy here. That's for three principal reasons. First of all, the Supreme Court in Lopez Mendoza noted that suppression of evidence is not a remedy for a completed wrong. At most, it is supposed to deter future misconduct. And indeed, even though the exclusionary rule was available in Bivens itself, the court did not hold that that was a basis to decline to recognize a damages remedy. Second, the standard for suppression in removal proceedings is narrower than the ordinary exclusionary rule. In fact, the exclusionary rule generally doesn't apply at all in removal violations. And of course, that's a narrower and more stringent standard. Finally, it's often not clear that there is anything to suppress or that suppression would make any difference. So evidence of identity is not suppressible, and the government often has or can obtain other evidence of alienage. And those are the two elements that the government has the burden to prove. So even in the extraordinary case where termination of removal and the government is free to initiate new proceedings based on whatever new evidence they may have. I have a question. Yes. What is your best case to show that there is such a cause of action against the INS people? So I think the two cases where this court has applied post-Abbasi where the court has recognized the Bivens claim in the search and seizure context are very relevant here. Neither of those involved narcotics agents. So that's Ione versus Hodges, which involved IRS agents who were investigating tax fraud. And Brunoler versus Tarwater, which involved FBI agents who were investigating securities violations. Neither of those was a new context. And there's nothing about the INA that's different or meaningfully different here either. But isn't immigration, civil immigration context different from a criminal context? I mean, obviously, in an immigration context, you're detaining foreign citizens. So their host home country may be concerned about it. Whereas in a criminal context, that isn't necessarily implicated. So that may give us pause on whether to extend that to the civil immigration context. So I think, Your Honor, I want to address that at the special factors stage rather than in terms of whether it's a new context. I don't think that the fact that the immigration laws are targeted at non-citizens has any relevance to whether it's a new context. You know, I don't think there's an argument that, for example, non-citizens do not have Fourth Amendment rights or that non-citizens are not entitled to bring Bivens claims. I think the Supreme Court itself recognized in Jennings that it would be possible for non-citizens to bring Bivens claims. So I don't think that that is a reason to take foreign policy considerations when you're dealing exclusively with citizens of another country. But again, ultimately, you know, what the Congress wants to do is one thing, at least doesn't give us pause of whether to extend it. I don't think so, Your Honor. I think in this regard, the Lanuza case is very helpful because the court specifically rejected the notion that anything to do with immigration automatically implicates national security or foreign policy. I think the mine run of cases that involve immigration or that arise against a backdrop of immigration do not raise the kinds of national security problems that were at issue in Abassi or in Mermady or even in Hernandez. You know, that case involves some, you know, somebody who, it involved an officer who shot someone across the border. There were immediately diplomatic implications. And that was a very difficult issue that is not, not going to be present in the vast majority of immigration cases. In Bivens' analysis, did Lanuza decide the case, i.e. decide there were no, wasn't a new context or that there were no factors? So Lanuza decided that it was a new context, but that there were no special factors counseling hesitation. And I think, you know, I agree that the specific facts in Lanuza were quite unique, but that case really does have broader significance in that the court said that, or recognized that the Abassi analysis has to be quite specific to the facts. And the court rejected, again, this notion that simply because a case has something to do with immigration, that there's no possibility of a Bivens remedy. I think the court was very clear in saying that, you know, that kind of broad reading would just be unsupportable. In an immigration context, I think Fourth Amendment implicates, implications are more serious because, and you'll typically, you'll have maybe ICE agents raiding a factory or workplace where you have dozens or maybe even hundreds of people. You don't have that in the criminal context. So if you apply that standard in the civil immigration context, where they may not have as much information or detailed reports, and you allow them to sue for damages in that criminal context where you don't have mass raids, typically you'll be targeting one or two persons. Again, does that counsel some caution here for the courts to extend that? I think there are two things that I would say to that particular point. I think for one, you know, I think this court has been clear that there's still individualized reasonable suspicion of probable cause required even in the immigration context where there are these mass arrests. And second, I think the concern that, you know, that this might invite many claims by immigrants, I think that sort of floodgates concern is not really going to be an issue. I don't think that you will be seeing an overwhelming number of these claims largely because of the pleading standards. And I think, you know, this sort of goes to the initial discussion that I was having with Judge Berzon. You know, I think as the government has, as the defendants have argued, there have to be particularized allegations not only to support the Fourth Amendment claim, but also to exclude the alternative explanation that there was probable cause. And I think that we have met those standards, but if we haven't, I think in the vast majority of cases, plaintiffs will not. You know, I think the case where, you know, someone's arrested or picked up 500 feet from the border, I think that sort of case is going to, those people will have a much harder time establishing a lack of reasonable suspicion or probable cause. And again, I think that we have amply met that here in view of the allegations that I have earlier discussed. But I think that will, that should address the concern about opening the floodgates to many new defendants' claims. Finally, I think I also wanted to, you know, pick up on the question about whether Congress has indicated that it doesn't wish to provide a remedy for violations like this. You know, Congress's attention to immigration as a whole, I think, does not mean that Congress has provided or declined to provide in the INA suitable remedies for the violations at issue here. It's useful to contrast that to Abbasi, where the court had, where Congress had, in fact, I think, commissioned like a 300-page report from the DOJ about the conditions of confinement at issue in that very case. The same was true in Schweifer versus Chiliki, with that case was about improper termination of Social Security benefits. And what was relevant there wasn't simply the existence of the Social Security Act, but it was the fact that Congress had specifically addressed this problem of improper termination of Social Security benefits and had created this, had enacted reform legislation to deal with that problem. And here there's no reason to think that Congress intended for the removal process to subsume claims of unconstitutional conduct by immigration officers outside removal proceedings. The Supreme Court in Jennings recognized, I think, how absurd it really would be to think that Bivens' claims were supposed to be channeled into the removal process. I see that my time has expired, so I'm happy to stop here unless the court has further questions. Thank you very much for your useful argument. A few quick points. First, on qualified immunity, it's clear, as Ms. Rueda says at page 34 of her Fourth Amendment claim, she says, and I quote, that the Fourth Amendment claim is predicated solely on the absence of a warrant, reasonable suspicion, or probable cause for her arrest. And it's not an accident that she's pled her case in that way. To the extent that she believes that retaliation might be relevant here, it would only underscore why her claim is a sharp departure from Bivens and why special factors would preclude a cause of action in these circumstances. On the point about regulations, on page 52 of the red brief, Ms. Rueda clarifies that she cites the regulations to support her argument that the Fourth Amendment requires adequate cause, and I think it's clear not for any effect on the substance of her claim. So the regulations, too, are no longer a part of this case as it's been presented to this court on appeal. Finally, on qualified immunity, I'd like to underscore here the concern that the Fifth Amendment has with this case. If it's really the case that a plaintiff can defeat qualified immunity and proceed to discovery on allegations as threadbare as these, even in the face of immigration charges filed the same day as an arrest, we really are looking at floodgates and circumstances where there is abundant reason to hesitate before this court creates a damages remedy. And won't the discovery end pretty quickly? I mean, I assume it's not going to be very difficult to get a declaration or a petition saying you went out to arrest her because we looked at her file and found out that she was here illegally? The Supreme Court has rejected precisely that argument. In cases where a court of appeals, for example, has said that it will to minimize the intrusion on an agent's immunity, the Supreme Court has said that qualified immunity is an immunity from suit. And as a result, it should be decided at the earliest possible stage in the case, not saved for summary judgment, as my opposing counsel suggested. And so the scope of discovery really is neither here nor there. The question is, again, whether these are circumstances where a plaintiff has defeated the more likely alternative explanation, which here is lawful conduct, and whether, as to the Bivens cause of action, these are circumstances where it would be consistent with the separation of powers for the court to oppose. I don't quite understand why the immigration bill, or as a different function of the importance of executive authority or legislative authority than the FBI or the DEA or many other federal agencies. I don't even know whether the numbers are comparable or non-comparable. But if one starts down that road, it seems to me you're going to include... The problem here is the Supreme Court has not been willing to directly overrule it. And once you say that, once you do that, you have a standard that doesn't have anything to do with legal considerations. It has to do with some prediction of whether the Supreme Court thinks that this is outside whatever it thinks this peculiar exception for Bivens is. And it doesn't appear to me what federal agency it is and what it matters, in terms of your floodgates arguments or anything else. So, Your Honor, it's not merely the federal agency that Bivens to a new category of defendants is something that would differentiate a case from Bivens itself. The point here is that the agents were operating under the INA, which is a statutory scheme that Congress has constructed meticulously, revisited many times, that is part of Congress's constitutional authority towards immigration, towards foreign policy, towards national security, all circumstances. It's a question of how and when you arrest somebody for being country undocumented. In other words, the particular issue here is not something that's in the statute. It's not in the statute. Where is it in the statute? So, Your Honor, the point, though, is that the statute provides, in the words of Abbasi, an alternative existing process through which Ms. Rueda can raise precisely the claim that she's attempted to pursue. But not because of the statute. I mean, that seems to me to be incredibly important, because the courts were not willing to accept a procedure in which there was no, you know, in extreme situations, you can't suppress evidence, but it's only about suppressing evidence, and it's not in the statute. Two points on that. My opposing counsel's argument about alternative remedies, respectfully, is, as far as I can tell, entirely circular. Her argument seems to be that because she has not chosen to file a motion to suppress, that there is no remedy, and that because there is no remedy, there is no alternative process, and that's simply not correct. It's not in the statute, and it wasn't created by Congress. It was judicially created. Is that correct? I'm sorry, could you repeat that, please, Your Honor? It's not in the statute, and it was not created by Congress. It was judicially created to preserve constitutional rights, just as a Bivens remedy would be. That's correct, but the question under Abbasi is not, and under all of the Supreme Court, whether or not the plaintiff chose to pursue the process. It's what the fact that there is such a process tells us about Congress's intent. It doesn't tell us anything because Congress didn't create the remedy. Anyway, your time is up. Both of you were incredible. The score for this session stands.
judges: Siler, Berzon, Lee